STATE OF NORTH CAROLINA v. FRANK JAMES CARTER, JR.

No. 47

(Filed 15 November 1972)

1. Criminal Law § 45— experimental evidence — discretion of court

The trial court is allowed a broad latitude of discretion in the admission of experimental evidence, especially with reference to the similarity of conditions existing at the time of the crime and conditions existing at the time of the experiment.

2. Burglary and Unlawful Breakings § 4; Criminal Law § 45; Rape § 4— experimental evidence — conditions of visibility — failure to establish similar conditions

Where defendant in a first degree burglary and rape case sought to introduce evidence of an experiment conducted to determine visibility in prosecutrix' apartment, but only one circumstance was shown to be similar on both the night of the offense and the night of the experiment, that circumstance being that all lights in the apartment were turned off, the trial court did not err in excluding the experimental evidence since variations in the conditions of the experiment and those of the actual occurrence were such as would tend to confuse and mislead rather than aid the jury in arriving at the truth.

APPEAL by defendant from Snepp, J., 12 March 1972 Session, MECKLENBURG Superior Court.

Defendant was tried upon two bills of indictment, consolidated for trial. One bill charged that on 19 December 1971 defendant broke and entered the dwelling house of Linda B. Owens between the hours of 3 a.m. and 4 a.m., said dwelling house then being actually occupied by Linda B. Owens, with intent to commit the felony of rape therein. The other bill charged that on 19 December 1971 defendant ravished and carnally knew Linda B. Owens by force and against her will.

The State's evidence tends to show that Linda B. Owens went to bed with her two children in the front bedroom of her apartment at about 1 a.m. on 19 December 1971. She left a light burning in the bathroom, locked all the doors, and closed all the windows and curtains. At about 3 a.m. she was awakened by a man standing over her with his hand over her mouth and a knife at her throat. No lights were burning in the apartment at that time. One child was also awakened and began crying. The man forced Linda B. Owens to accompany him into the back bedroom.

In the back bedroom the curtains were closed but a street light fifty feet away was burning. The "lighting condition" in the back bedroom was dim. Here the man forced Linda B. Owens to remove her clothing and he had sexual intercourse with her against her will, keeping the knife at her throat. He was on top of her five or six minutes. He then got up and left the back bedroom going toward the kitchen. Linda B. Owens returned to the front bedroom with her children and observed the man as he came from the kitchen and went out the front door. She was in the presence of her assailant for fifteen to thirty minutes. In court, she unequivocally identified defendant as the man who had raped her.

Dr. John Hill examined Linda B. Owens at 5:30 a.m. and found live motile sperm in her vagina.

In response to a telephone call, officers went to 820 Villa Court where they found defendant asleep in bed at 4:45 a.m. on 19 December 1971. His pants were unzipped and his privates exposed. Defendant was awakened and placed under arrest for housebreaking at 820 Villa Court.

Mary Jane Burton, an expert "criminalist," testified that she compared fibers found embedded in the mud on the shoes defendant was wearing when arrested with fibers from a rug in Linda B. Owens' apartment, and that they were "the same in my opinion." She also compared glass fragments embedded in that mud with the remnants of a broken glass Christmas tree ornament found in Linda B. Owens' living room, and in her opinion "it was the same." In addition, she compared animal hairs found on defendant's undershorts and shoes with animal hairs found on the bedspread upon which Linda B. Owens had been raped, and in her opinion "these hairs were all similar."

The defendant, as a witness in his own behalf, testified that he had been out dancing and drinking on the night of the crime and that he had gone to the house at 820 Villa Court with one Michael Wilson. They entered by the front door, talked to another boy therein, and decided to spend the night. Defendant then went to bed and was later arrested there. Defendant testified that he had never been in the home of Linda B. Owens and had never raped her.

Geraldine Massey, lessee of the house at 820 Villa Court, testified that she came home at 2:45 a.m. on the night of the crime and, after sitting up for "about an hour," discovered defendant asleep in her bedroom. She then called the police and they came within ten minutes.

For the purpose of impeaching the identification testimony of Linda B. Owens, defendant tendered evidence of an experiment performed on the night of 29 March 1972, bearing upon the conditions of visibility in her apartment on the night she was raped. The court conducted a voir dire in the absence of the jury to determine the competency of the proffered evidence. On the voir dire examination defendant elicited testimony tending to show that defendant's attorney, the solicitor, two police officers, and others chosen by defense counsel went to the apartment of Linda B. Owens at 11:30 p.m. on the night of 29 March 1972. They closed all the curtains except those in the living room, turned off all the lights, and then tested their ability to see each other at various distances. At the conclusion of the voir dire, the court made findings of fact and concluded as a matter of law that the testimony with respect to the experiment was inadmissible. The court excluded that testimony and defendant excepted.

The jury convicted defendant of first degree burglary and rape as charged in the bills of indictment, recommending life imprisonment in each case. Judgments were pronounced accordingly, the life sentences to run concurrently, and defendant appealed to the Supreme Court assigning as error the exclusion of the experimental evidence. The facts with respect to the experiment will be discussed in the opinion.

*Charles V. Bell and Patricia E. King, Attorneys for defendant appellant.*

*Robert Morgan, Attorney General, and Russell G. Walker, Jr., Assistant Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

The sole question for decision on this appeal is whether the trial judge erred in excluding defendant's experimental evidence.

[1]  The rule with us is accurately stated in *State v. Phillips*, 228 N.C. 595, 46 S.E. 2d 720 (1948), as follows:

> "The competency of experimental evidence depends upon its trustworthiness to aid in the proper solution of the problem in hand. [Citations omitted] When the experiment is carried out under substantially similar circumstances to those which surrounded the original transaction, and in such a manner as to shed light on that transaction, the results may be received in evidence, although such experiment may not have been performed under precisely similar conditions as attended the original occurrence. The want of exact similarity would not perforce exclude the evidence, but would go to its weight with the jury. [Citation omitted] Whether the circumstances and conditions are sufficiently similar to render the results of the experiment competent is of course a preliminary question for the court, and unless too wide of the mark, the ruling thereon will be upheld on appeal. [Citations omitted] * * * The measure of permissible variation in the conditions of the experiment from those of the occurrence is usually determined by whether such variation would tend to confuse or to mislead the jury. The object of every trial is to find the truth of the matter in controversy. If the experimental evidence contribute to this end it is admissible; otherwise it should be excluded."

The general practice allows the trial court some, *and more commonly a broad,* latitude of discretion in the admission of such evidence, especially with reference to the similarity of conditions existing at the time of the crime and conditions existing at the time of the experiment. See Annotation: Admissibility of experimental evidence to show visibility or line of vision, 78 A.L.R. 2d 152, where many cases on the subject are collected and discussed.

[2]  Turning to the facts of this case, the following circumstances were established by the testimony of Linda B. Owens

as having existed on the night of 19 December 1971 when she was attacked: (1) A street light in front of her house, about fifty feet away, was burning and the light from it shone through the living room curtains into the back bedroom where the rape occurred; (2) no lights were burning in her apartment and all the cotton unlined curtains were closed during the attack; (3) during the fifteen to thirty minutes the attacker was in her apartment, she made a special effort to look at him carefully and to remember how he looked; (4) the weather was clear; (5) her assailant was on top of her for five or six minutes and she observed him in such close proximity during that time; and (6) Officer Price took part in the investigation on the night of the crime and was in the apartment between 4 a.m. and 5 a.m. He turned all the lights off, yet was able to see other people in the room and to make out their features.

On the voir dire as to the circumstances surrounding the experiment on the night of 29 March 1972, the evidence adduced: (1) failed to establish that the street light was burning during the experiment; (2) conflicted as to weather conditions, two witnesses testifying it was clear and four witnesses testifying that it was cloudy and overcast; (3) conflicted as to whether the curtains in the living room were open or closed, two witnesses testifying that the curtains in the living room were not completely closed and one witness testifying that the living room curtains were closed when the group entered the apartment and opened prior to the experiment, and Officer Thompson testifying that the curtains in the living room had been changed and were not the same curtains that were there on the night of the crime; and (4) reveals that the participants in the experiment disagreed on the degree of visibility during the experiment: Officer Thompson testified that he could read bold print in the newspaper, could distinguish racial identity in the living room and back bedroom, and could distinguish facial features in the back bedroom at close range; yet Solicitor Moore could not identify facial features at distances of six to eight feet and Officer Mobley, Linda Moore and Debra Black could not identify any person in the rooms except by silhouette.

At the conclusion of the voir dire the trial judge found as follows:

"In the absence of the jury, the court conducted a hearing as to the admissibility of testimony concerning

a visit made to the residence of the prosecuting witness, Mrs. Linda Owens, between 11:00 p.m. and 11:30 p.m. on the night of March 29, 1972. The court, having heard the evidence, makes Findings of Facts as follows: (1) Between 11:00 p.m. and 11:30 p.m. on March 29, 1972, a group of persons, including counsel for the defendant, the solicitor of this District, police officers and persons chosen by defendant's counsel, went to the home of Mrs. Linda Owens at 2532 Weddington Avenue, with the permission of the court. (2) On the early morning of December 19, 1971, at approximately 3:00 a.m. the witness Mrs. Owens observed her alleged assailant for a period of approximately twenty minutes in the front bedroom of her home, in the back bedroom of her home and in the living room of her home, as the assailant walked from the kitchen across the living room to the front door. She observed him at close range, he being close enough to touch her with his moustache and having sexual intercourse while on top of her. (3) The weather in the early morning of December 19, 1971, was clear and cold. (4) The weather on the evening of March 29, 1972, was overcast and cloudy. (5) On the early morning of December 19, 1971, Mrs. Owens had been asleep since about 1:00 a.m. There were no lights in the house when she awakened. (6) On the evening of March 29, 1972, the persons present at the Owens' home entered the house when lights were turned on. The lights were thereafter switched off before observations were made. Other persons did not come closer to the witnesses during the time the room was darkened than approximately two feet and remained there only for short periods of time. (7) On the evening of March 29, 1972, no attempt was made to identify persons crossing from the kitchen of the Owens' home through the living room to the front door, as described in the testimony of Mrs. Owens.

"The conditions in the home of Mrs. Owens on the night of March 29, 1972, between 11:00 p.m. and 11:30 p.m. under which the witnesses attempted to make identifications were not shown to be substantially similar to the conditions of December 19, 1971, at about 3:00 a.m., as described in the testimony of Mrs. Owens.

State v. Carter

"The court, therefore, concludes as a matter of law that testimony as to this experiment is not admissible. The State's objection to the testimony is sustained."

It is apparent that the crucial findings of fact are supported by the evidence offered on the voir dire. That evidence establishes only one circumstance as being similar on both nights—all lights in the Owens' apartment were turned off. As to other revelant circumstances the evidence is contradictory, and similarity is left in doubt. The variations in the conditions of the experiment from those of the occurrence are such as would tend to confuse and mislead rather than aid the jury in arriving at the truth. In holding that the conditions of the experiment were not shown to be sufficiently similar to render the evidence competent, the trial court was not "too wide of the mark" and his ruling thereon will be upheld. *State v. Phillips, supra; State v. Brown,* 280 N.C. 588, 187 S.E. 2d 85 (1972). Moreover, it has been said that "evidence of this kind is not favored by the courts, and great caution should be exercised in receiving it." 22A C.J.S., Criminal Law, § 645(1).

No error.