STATE OF NORTH CAROLINA v. JOHN CALVIN GOINS

No. 7427SC706

(Filed 5 February 1975)

1. **Homicide § 21— second degree murder — death by shooting — sufficiency of evidence**

    Evidence was sufficient to be submitted to the jury in a second degree murder prosecution where it tended to show that deceased's death resulted from a gunshot wound inflicted by defendant, that at the time this wound was inflicted defendant shot at deceased from close range not once but twice, that both shots struck deceased, and that a statement made by defendant at the hospital subsequent to the crime tended to show animosity toward the man he shot.

2. **Homicide § 30— second degree murder case — submission of manslaughter issue proper**

    The trial court did not err in submitting an issue as to defendant's guilt of manslaughter where the evidence would support a finding that defendant unlawfully killed deceased, but without malice, express or implied, or that he acted in self-defense but used excessive force.

3. **Criminal Law § 57— death by shooting — firing rifle and pistol into treated paper — admissibility of test results**

    The trial court in a second degree murder prosecution did not err in admitting testimony of two SBI employees concerning certain tests which they had made of the clothing worn by defendant and deceased at the time of the shooting to determine the presence of burned gunpowder particles and concerning tests which they had made by firing defendant's rifle and deceased's pistol at various distances into specially treated paper to determine the distances at which these weapons had been fired at the time of the fatal shooting.

4. **Criminal Law § 75— statement by defendant in hospital emergency room — admissibility**

    The trial court properly determined that a statement by defendant in a hospital emergency room was voluntary and admissible where the evidence tended to show that an officer not in uniform and defendant were the only people in the room, defendant had his face turned toward the wall and his eyes were open when he made the

State v. Goins

statement, the officer said nothing before or after defendant spoke, and the officer did not know whether defendant knew he was in the room.

ON *Certiorari* to review trial before *Grist, Judge,* and judgment rendered at the 25 February 1974 Session of Superior Court held in CLEVELAND County.

Defendant was indicted for the first-degree murder of John Hugh Howell II and pled not guilty.

Evidence introduced by the State tended to show that on the afternoon of 26 August 1973, the defendant, who had been drinking, quarreled with his wife. In response to a telephone call received by the Lincoln County Sheriff's Department, Howell, an officer in the Department, went to defendant's residence near Lincolnton, taking with him a capias for defendant's arrest. Howell, who was in uniform, knocked on the front door. Receiving no reply, he went across the road to a store where he found Mrs. Goins and several of the couple's children. Following a brief conversation with Mrs. Goins, Howell returned to the house, accompanied by Keith Goins, defendant's son. Keith crawled through a window, opened the front door, and then rejoined his family at the store. Howell entered the house through the front door. After ten or fifteen seconds, seven gunshots were heard coming from within the house. Moments later, Howell, holding his chest, came out of the house and collapsed on the hood of the Goins' car, which was parked directly in front of the house. He then crawled several feet to his patrol car and at approximately 6:39 p.m. radioed for help.

Other law enforcement officers arriving at the house shortly thereafter found Howell, wounded in the chest and wrist, lying by his car. Defendant Goins was found lying in the hallway of the house with a wound in his lower torso. Howell's .38 caliber revolver, containing one unfired cartridge and five fired cartridge casings, was found in Howell's belt holster. A .22 caliber rifle was found lying beside Goins and two discharged .22 caliber cartridge casings were found in the hallway.

Both Howell and Goins were taken to Lincoln County Memorial Hospital, where Howell died at approximately 7:30 p.m. The pathologist who conducted an autopsy testified that in his opinion Howell died of a gunshot wound that entered his left chest and caused massive internal hemorrhage. Ballistic tests of a .22 caliber bullet taken from his spinal column showed the bul-

let to have been fired from the rifle found beside Goins. While at the hospital that evening, defendant Goins was heard to say, "I shot that big son-of-a-bitch." The pathologist testified that Howell was "a very large man," six feet two inches tall.

The rifle, the cartridge casings, the bullet removed from Howell's body, Goins's pants, and Howell's .38 caliber pistol and the shirt he was wearing when shot were sent to the State Bureau of Investigation in Raleigh for testing. The SBI conducted several chemical tests to determine the quantity and pattern of gunpowder on Howell's shirt and on Goins's pants. Based upon the results of these tests two SBI agents, accepted as experts in the field of ballistics and firearms, testified to their opinions that the .22 rifle when fired was approximately three feet from Howell's shirt, and Howell's .38 pistol when fired was approximately six or more feet from Goins's pants.

At the conclusion of the State's evidence the trial court dismissed the charge of first-degree murder. The defendant offered no evidence. The court submitted the case to the jury on charges of second-degree murder or manslaughter. The jury found defendant guilty of second-degree murder and from judgment imposing a prison sentence, defendant gave timely notice of appeal. To permit perfection of the appeal, this Court subsequently granted his petition for writ of certiorari.

*Attorney General Carson by Assistant Attorney General Roy A. Giles, Jr. for the State.*

*C. E. Leatherman for defendant appellant.*

PARKER, Judge.

[1] Defendant assigns error to the denial of his motion for nonsuit on the charge of second-degree murder, contending that the evidence was insufficient to support a reasonable inference that the killing was done with malice, express or implied. Specifically, defendant argues that the evidence was insufficient to show that the killing resulted from an intentional use of a deadly weapon such as to give rise to a presumption of malice and that there was no showing of express malice. We do not agree. Viewing the evidence in the light most favorable to the State and giving the State the benefit of the legitimate inferences which may be reasonably drawn therefrom, we find the evidence sufficient to warrant a jury finding that Howell's death resulted from a gunshot wound inflicted by the defendant, that

at the time this wound was inflicted defendant shot at Howell from close range not once but twice, and that both shots struck Howell. These findings would reasonably support an inference that defendant intentionally used his rifle as a deadly weapon in an assault upon Howell and that Howell's death resulted from such intentional use. A presumption of malice arises when one intentionally assaults another with a deadly weapon and thereby proximately causes his death. *State v. Price,* 271 N.C. 521, 157 S.E. 2d 127 (1967). In addition, in this case the evidence of defendant's statement at the hospital tended to show animosity toward the man he shot. We hold the evidence sufficient to support a jury finding of malice and that there was no error in denying defendant's motion for nonsuit as to the charge of murder in the second degree.

[2]    There also was no error in submitting an issue as to defendant's guilt of manslaughter. The evidence would support a finding that defendant unlawfully killed Howell, but without malice, express or implied, or that he acted in self-defense but used excessive force. Either finding would warrant a verdict of manslaughter. 4 Strong, N. C. Index 2d, Homicide, § 6.

[3]    Two employees of the State Bureau of Investigation, Satterfield and Hurst, testified to certain tests which they had made of the clothing worn by defendant and by Howell at the time of the shooting to determine the presence of burned gunpowder particles and concerning tests which they had made by firing defendant's rifle and Howell's pistol at various distances into specially treated paper to determine the distances at which these weapons had been fired at the time of the fatal shooting. Defendant's counsel recognized Satterfield as an expert in ballistics and firearms and the court accepted Hurst as an expert in his field of "firearms and tool mark identification," including "clothing examination, and powder pattern tests, shot tests and test firings." Defendant assigns error to the admission into evidence over his objections of the testimony of these witnesses concerning these tests and to admitting the test papers for the purpose of illustrating their testimony. In support of this assignment defendant contends that it does not appear from the evidence that the experiments were carried out under substantially similar circumstances to those which existed at the time Howell was killed, and in particular he questions why it would not have been better in making the test firings to use other portions of the shirt worn by Howell and of the pants worn by defendant rather than the specially treated paper.

---

---

In ruling on the admissibility of experimental evidence, the trial court is generally accorded a broad latitude of discretion, especially with reference to determining whether the conditions under which the experiment was conducted were sufficiently similar to the conditions existing at the time of the crime. *State v. Carter,* 282 N.C. 297, 192 S.E. 2d 279 (1972). "The want of exact similarity would not perforce exclude the evidence, but would go to its weight with the jury." *State v. Phillips,* 228 N.C. 595, 598, 46 S.E. 2d 720, 722 (1948). In *State v. Atwood,* 250 N.C. 141, 108 S.E. 2d 219, 86 A.L.R. 2d 602 (1959) the trial court permitted a special agent of the SBI to testify concerning test firings very similar to those disclosed by the testimony in the present case. In that case, as here, the test firings were made from varying distances into paper and the powder residue on the paper was then compared with the powder residue found on the deceased's clothing in order to determine the distance from which the fatal shot was. fired. Our Supreme Court found no error in the admission in evidence of testimony as to the results of such experiments and in permitting the SBI agent to testify to his opinion based thereon as to the distance between gun and victim in that case. We find no error in the admission of similar evidence in the present case. For cases from other jurisdictions, see Annot., 86 A.L.R. 2d 611, "Admissibility, in homicide prosecution, of evidence as to tests made to ascertain distance from gun to victim when gun was fired."

[4] Defendant assigns error to the court's overruling his objection to testimony by the State's witness, Danny Hallman, concerning a statement which Hallman overheard defendant make in the emergency room of the hospital shortly after the shooting. Before admitting this testimony, the court conducted a voir dire hearing at which Hallman and defendant testified. Hallman, a member of the Lincolnton Police Department, testified that he saw defendant lying on a bed in the emergency room with his head turned toward the wall, that at the time there was no one else in the room other than himself and the defendant, that he did not have his uniform on and did not say anything to the defendant and did not know whether defendant knew he was there, that he overheard defendant say, "I shot that big son-of-a-bitch," that defendant's eyes were open looking toward the wall when he said this, and that defendant did not turn around or do or say anything more. Defendant testified that he had never seen Hallman to his knowledge,

Nivens v. Tire & Rubber Co.

did not know if he had been in the emergency room, and did not remember anything until the following morning. At the conclusion of the voir dire hearing, the court made detailed findings of fact as to the circumstances existing at the time defendant's statement was made, including a finding that the statement was spontaneous and not prompted by any question, and concluded that testimony concerning the statement might be offered in evidence. In this ruling we find no error. The court's finding that the statement was spontaneous was fully supported by the evidence at the voir dire. A volunteered statement is not barred by the Fifth Amendment and its admissibility is not affected by the holding in *Miranda*. The credibility of the State's witness and the weight to be given his testimony were for the jury to determine.

We have examined all remaining assignments of error and find none such as to warrant the granting of a new trial. The charge of the court was free from prejudicial error and gave the defendant full benefit of the law as to the right of self-defense. In the trial and in the judgment imposed, we find

No error.

Chief Judge BROCK and Judge MARTIN concur.