State v. Jones

———

STATE OF NORTH CAROLINA v. LONNIE JONES

No. 7812SC1139

(Filed 5 June 1979)

1. Homicide § 28.4— defense of home—no instruction required

   Evidence in a homicide prosecution was insufficient to require an instruction on defense of home where it tended to show that defendant did not fire the fatal shots until deceased had ceased beating on the front door of defendant's home and had turned on defendant's brother.

2. Homicide § 28— self-defense—no instruction required

   The trial court in a homicide prosecution properly refused to instruct the jury on self-defense where there was no evidence that deceased, at the time he

was shot, was attacking or otherwise attempting to harm defendant so that defendant would have a reasonable basis for believing that he must kill in order to prevent his own death or serious injury; rather, according to defendant's own evidence, the victim was in the process of fending off an attack from defendant's brother at the time he was shot twice in the back and once in the side.

**3. Homicide § 27.1 — heat of passion — jury instruction not required**

Defendant in a homicide prosecution was not entitled to a mitigating instruction on heat of passion where defendant's own testimony indicated that he initially fired warning shots in an attempt to get the victim to leave the premises and that he then shot deceased to protect his brother, and such evidence tended to show that defendant's actions were reasoned rather than the result of some suddenly aroused violent passion.

Judge WEBB dissenting.

APPEAL by defendant from *Brewer, Judge.* Judgment entered 29 August 1978 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals on 23 April 1979.

Defendant was charged in a proper indictment with the second degree murder of Lonnie Gregory, Jr. Upon defendant's plea of not guilty, the State presented evidence tending to show the following:

On 22 October 1977, Van Porter, Ronnie Jones, Joe Thrash, and Buddy Dunn were walking down Cude Street heading toward the Jones' house located on Center Street in the Massey Hill section of Fayetteville. As they passed Richard Hall's house on Cude Street, a man standing in the front yard yelled derogatory comments and threw a beer can at them. The four youths then began running and the man, Lonnie Gregory, chased them down Cude Street and onto Center Street where they ran up to the Jones' house. Inside the house were Mrs. Alma Jones, the defendant's mother, Carolyn Jones, Johnny Ray Jones, and Billy Jean Locklear. The four youths informed the occupants that there was some trouble outside. At this time, Lonnie Gregory was standing in the road in front of the house cursing and shouting, and he dared everybody in the house to come outside and fight him. The defendant, who was in the kitchen, went to a room in the back of the house and got a loaded .22 automatic rifle, and then walked out the back door. Mrs. Alma Jones came out on the porch and told Lonnie Gregory to go home and leave them alone, that they did not want any trouble. The defendant then came around the

side of the house and fired some shots from the rifle. At this point, Lonnie Gregory was still in the road and was not hit by any of the shots. Gregory ran up to the house and began beating on the front door. Ronnie Jones, the defendant's brother, came around the house with a shovel and hit Gregory three times with it. As Gregory turned toward Ronnie Jones, he was shot twice in the back and once in the side by the defendant. At this point Weldon Whitehead, a friend of Lonnie Gregory, arrived on foot and saw the deceased lying face down near the front porch of the house. Shortly thereafter, an automobile pulled up in front of the Jones' residence and Tommy Gregory, the brother of Lonnie Gregory, got out and ran up to the porch. Tommy Gregory and Weldon Whitehead took Lonnie Gregory to the hospital where he subsequently died from the three gunshot wounds.

The defendant presented evidence tending to show the following:

The first shots fired when Lonnie Gregory was standing in the street were fired up into the air as warning shots in an attempt to get Gregory to leave. After Lonnie Gregory came onto the porch, he tore the screen and beat on the front door. Ronnie Jones, the brother of the defendant, got a shovel from the yard behind the house. He then went to the front of the house and hit Gregory three times with the shovel in an attempt to get Gregory to stop beating on the front door. When Gregory had chased Ronnie Jones and the others down Cude Street he told Ronnie Jones that if he caught him he would kill him. While he was being chased, Ronnie Jones saw Gregory reach in his pocket, but he could not tell whether Gregory had a weapon at that time because it was too dark. When Gregory was up on the porch beating on the front door, Ronnie Jones saw an object in Gregory's right hand that "was something like a knife." After Gregory had been hit with the shovel for the third time, he turned slightly to his right. At that point the defendant fired the three shots that struck Gregory. The defendant testified, "I fired the shots because he turned on my brother . . . When I shot Lonnie Gregory, Jr., I was frightened, scared. I shot him because he said he was going to hurt somebody and he had turned towards my brother at that time." The defendant did not see any weapon in Gregory's hand during the time that Gregory was standing in the street. When Gregory was on the porch beating on the door, the defendant saw

what he thought was a pocket knife in Gregory's right hand. When Gregory turned on Ronnie Jones after being hit with the shovel, the defendant thought he saw the knife again. The defendant testified, "I thought Lonnie Jr. Gregory was trying to get in on my mom and my sisters and my brothers, to hurt them or somebody . . . [H]e had just started to turn when I started shooting."

The defendant was found guilty of second degree murder and sentenced as a regular youth offender to a term of fifty years. Defendant appealed.

*Attorney General Edmisten, by Associate Attorney Fred R. Gamin, for the State.*

*Assistant Public Defenders James R. Parish and Malcolm R. Hunter, Jr. for defendant appellant.*

HEDRICK, Judge.

[1] The defendant first contends that the trial court erred in refusing to charge the jury on defense of home. In North Carolina, the courts have recognized a substantive right of an individual to defend his home from attack that is a separate right from that of an individual to defend himself or his family. *State v. Spruill*, 225 N.C. 356, 34 S.E. 2d 142 (1945).

> When a trespasser enters upon a man's premises, makes an assault upon his dwelling, and attempts to force an entrance into his house in a manner such as would lead a reasonably prudent man to believe that the intruder intends to commit a felony or to inflict some serious personal injury upon the inmates, a lawful occupant of the dwelling may legally prevent the entry even by the taking of the life of the intruder . . . A householder will not, however, be excused if he employs excessive force in repelling the attack. . . [Citations omitted.]

*State v. Miller*, 267 N.C. 409, 411, 148 S.E. 2d 279, 281 (1966). *See also State v. Gray*, 162 N.C. 608, 77 S.E. 833 (1913).

We are of the opinion that there was insufficient evidence that the defendant's actions in the present case were directed towards preventing the violent and forceful entry of an intruder

into his home to require the judge to give an instruction on defense of home. By his own testimony, the defendant admitted that he did not shoot Lonnie Gregory until Gregory had turned on his brother. While the defendant did testify that he thought Gregory "was trying to get in on my mom and my sisters and my brothers, to hurt them or somebody," the evidence also discloses that Gregory had stopped beating on the front door of the house and had turned toward the defendant's brother when Gregory was shot. The defendant testified, "I fired the shots because he turned on my brother . . . I shot him because he said he was going to hurt somebody and he had turned towards my brother at that time." This testimony did raise the issue of defense of a family member, and the jury was properly instructed with regard to that defense. In light of the above, however, we think there was insufficient evidence presented to raise the issue of defense of habitation to require the judge to instruct the jury with regard to it.

[2]  The defendant next contends that the trial court erred by failing to charge the jury on the defendant's right of self-defense. A person may use such force as is necessary to save himself from death or great bodily harm in the lawful exercise of his right to self-defense. A person may kill another in self-defense even if it was not necessary to kill to avoid death or great bodily harm if he believes it is necessary and has reasonable grounds for such belief. *State v. Deck*, 285 N.C. 209, 203 S.E. 2d 830 (1974). When the State or defendant produces evidence that the defendant acted in self-defense, then the trial judge must state and apply the law of self-defense to the facts of the case. On the other hand, if there is insufficient evidence of self-defense, there is no duty of the trial judge to give instructions on that defense. *State v. Davis*, 289 N.C. 500, 223 S.E. 2d 296 (1976).

In the present case there was no evidence that the defendant shot and killed Lonnie Gregory in self-defense. While the defendant did testify that he was frightened and scared, in order to require the judge to instruct on self-defense, there must be some evidence that the defendant acted out of a reasonable belief that it was necessary for him to kill or use the force used in order to save himself from death or great bodily harm. There was no evidence that Lonnie Gregory was, at the time he was shot, attacking or otherwise attempting to harm the defendant so that

the defendant would have a reasonable basis for believing that he must kill in order to prevent his own death or serious injury. According to the defendant's own evidence, the victim was in the process of fending off an attack from the defendant's brother at the time he was shot twice in the back and once in the side. We hold that under this evidence, the trial judge properly refused to instruct the jury on self-defense.

[3] Defendant's final contention is that the judge erroneously failed to charge the jury that if the defendant acted out of a heat of passion he would only be guilty of voluntary manslaughter. Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. *State v. Davis, supra.* When there are circumstances that cause an accused to kill another out of a heat of passion, a homicide may be mitigated from murder to manslaughter. *State v. Jennings,* 276 N.C. 157, 171 S.E. 2d 447 (1970). Heat of passion means "that the defendant's state of mind was at the time so violent as to overcome his reason, so much so that he could not think to the extent necessary to form a deliberate purpose and control his actions." *State v. Pope,* 24 N.C. App. 217, 222, 210 S.E. 2d 267, 271 (1974). In *State v. Jennings,* 276 N.C. at 161, 171 S.E. 2d at 450, the Court quoted with approval Black's Law Dictionary's definition of heat of passion as "any of the emotions of the mind known as rage, anger, hatred, furious resentment, or terror, rendering the mind incapable of cool reflection."

In order to be entitled to an instruction on heat of passion negating the element of malice and reducing the offense from murder to manslaughter, there must be some evidence from the State or the defendant that the intent to kill was formed under the influence of some suddenly aroused violent passion. *State v. Berry,* 295 N.C. 534, 246 S.E. 2d 758 (1978); *State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd on other grounds,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed. 2d 306 (1977); *State v. Brogden,* 36 N.C. App. 118, 243 S.E. 2d 181 (1978). In the absence of such evidence, the State is entitled to rely on the presumption that the killing was done with malice when it is admitted that the killing was accomplished with a deadly weapon. *See State v. Chavis,* 30 N.C. App. 75, 226 S.E. 2d 389, *cert. denied,* 290 N.C. 778, 229 S.E. 2d 33 (1976).

The ruling in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975), precludes the State from utilizing these presumptions in such a way as to relieve it of the burden of proof on the elements of malice and unlawfulness when the issue of their existence is raised by the evidence. *State v. Berry, supra; State v. Hankerson, supra; State v. Brogden, supra.*

In the present case, there was no evidence that the defendant acted out of a heat of passion. Indeed, the defendant's own testimony indicates that he initially fired warning shots in an attempt to get Gregory to leave and then he shot the deceased to protect his brother. This evidence tends to show that the defendant's actions were reasoned rather than the result of rage, anger, or some suddenly aroused violent passion. Thus, the State was entitled to rely on the presumption of malice and the defendant was not entitled to a mitigating instruction on heat of passion.

Defendant also argues under this assignment of error that if he had an "honest and actual belief" that the killing was necessary in order to prevent great bodily harm or death to his brother, that would be sufficient to rebut the presumption of malice. Defendant cites *State v. Potter*, 295 N.C. 126, 244 S.E. 2d 397 (1978), in support of this argument.

The rule argued for by the defendant has never been the law of North Carolina. In order for the killing of another to be excused on the basis of defense of a family member, the defendant must have had a *reasonable* belief that the killing was necessary to prevent the death or serious injury of the family member. *State v. Kirby*, 273 N.C. 306, 160 S.E. 2d 24 (1968). *State v. Potter*, 295 N.C. at 143, 244 S.E. 2d at 408, reaffirms the proposition that when a person is killed by another who is acting in self-defense, the killing will be excused if "it appeared to defendant and he believed it to be necessary to shoot [the attacker] in order to save himself from death or great bodily harm," *State v. Deck, supra*, and "defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness. *State v. Ellerbee*, 223 N.C. 770, 28 S.E. 2d 519 (1944)."

We hold defendant had a fair trial free from prejudicial error.

---

---

No error.

Chief Judge MORRIS concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent for two reasons. First, I believe the defendant was entitled to a charge on the defense of the home. The majority says this is not so because the deceased had turned away from trying to enter the house at the time he was shot. I would hold that although the deceased was not presently trying to force an entrance, the evidence showed he was on the porch for that purpose, and the defendant could reasonably believe he intended to commit a felony or inflict some serious personal injury upon the inmates. I do not believe he had to be in the act of trying to force his way in at the very moment the defendant fired the gun. *See State v. Deck*, 285 N.C. 209, 203 S.E. 2d 830 (1974) for a case in which the Supreme Court held self-defense should be charged although the deceased was not at that very moment threatening the defendant.

I also believe the defendant was entitled to a charge in regard to acting out of the heat of passion. I can imagine situations more provocative than the one defendant faced, but this one was certainly provocative enough. I believe a jury could reasonably conclude that the circumstances surrounding the defendant were enough to make a normal man so angry as to overcome his reason.