STATE OF NORTH CAROLINA v. RUSSELL COUNCIL JUDGE

No. 55A83

(Filed 7 July 1983)

**1. Homicide § 21.5— first degree murder—sufficiency of evidence**

The trial court did not err in submitting the charge of first degree murder to the jury where the evidence tended to show that defendant had shot at the deceased two weeks prior to the killing; the defendant and the deceased had argued earlier in the day and fought with knives, resulting in a cut on the defendant's shoulder; just prior to the fatal shooting, a witness told the defendant that the deceased was coming in his car and that if he wanted to

State v. Judge

"get" him this was his chance; following that, the defendant took his shotgun and pointed it at the deceased's car; the deceased had opened the door and placed one foot outside the car when the defendant shot him once with a sawed-off shotgun; and the defendant then got in his own car and left.

**2. Criminal Law § 89.4— admission of prior inconsistent statements of defendant's witnesses—proper**

In a prosecution for first degree murder, the trial court did not err in allowing two officers to testify on rebuttal concerning two witnesses' prior inconsistent statements where the statements were pertinent and material to the pending inquiry and evidence of the facts contained within the statements would have been admissible if offered for some purpose other than mere contradiction. One of the witness's statements tended to show that defendant acted with premeditation and deliberation and the other witness's statement dealt with whether or not defendant's shooting of the deceased was in self-defense.

**3. Homicide § 30.2— failure to charge on voluntary manslaughter—harmless error**

Even assuming the evidence in a trial for first degree murder supported an instruction on manslaughter, the court's failure to give the requested instruction was harmless error since the court instructed the jury on murder in the first degree, murder in the second degree and self-defense and since the jury returned a verdict of murder in the first degree.

BEFORE *Brown, Judge,* at the 30 August 1982 Criminal Session of Superior Court, DUPLIN County, the defendant was convicted of murder in the first degree and sentenced to life imprisonment. The defendant appealed to the Supreme Court as a matter of right pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by David Roy Blackwell, Assistant Attorney General for the State.*

*Samuel S. Popkin, Attorney for defendant appellant.*

MITCHELL, Justice.

The defendant contends that there was not sufficient evidence to submit the charge of murder in the first degree to the jury. The defendant also argues that the court erred in allowing the State to produce evidence of the defendant's witnesses' prior inconsistent statements. Finally, the defendant assigns as error the trial court's refusal to charge the jury with regard to the possible verdict of guilty of voluntary manslaughter. Having reviewed the defendant's assignments of error, we find no reversible error.

The State produced evidence which tended to show that the deceased, Benny Frank Farrior, was killed on 21 June 1982 by a single shot from a shotgun. The deceased and the defendant, Russell Council "Bobby" Judge, had known each other for several years and lived on the same road. Approximately two weeks before the fatal shooting, the two men had argued and the defendant shot at, or in the general direction of, the deceased. On the morning of 21 June 1982, the defendant and the deceased again argued and fought. The defendant received a knife cut on his shoulder. The two men parted and the defendant left to drink beer with some friends. Later that afternoon the defendant was in his house as the deceased was driving down the road. Someone yelled to the defendant, "if you want to get [the deceased], you better come on." The defendant grabbed his sawed-off shotgun, went out to the deceased's car and stuck the gun through the window on the passenger side of the car. The deceased opened the door of the car and placed one foot outside when the defendant fired one shot from his gun.

After the shooting, the defendant got into his car and sped off. The police were called and a chase ensued during which the defendant threw the shotgun and a box of shotgun shells from his car. He finally crashed his car near the Duplin-Onslow County line.

The pathologist testified that the pellets passed through the deceased's arm and into his chest, causing his death. No gun was found near the body or in the deceased's car.

The defendant did not testify but presented four witnesses. The defendant's evidence was consistent with the evidence for the State concerning the earlier confrontation between the defendant and the deceased. The defendant's evidence concerning the fatal shooting differed considerably from the State's evidence. According to the witnesses for the defendant, the deceased drove by the defendant's house and the two men exchanged words. The deceased was standing beside his car when he reached into the car and pulled out a rifle or shotgun, pointed it at the defendant, cocked it and pulled the trigger. The gun did not fire. He was cocking the gun again when he was shot. None of the defendant's witnesses testified that they saw the defendant with his shotgun, although the State introduced an earlier statement made to police

officers by one of the defendant's witnesses in which she said that the defendant had taken his shotgun with him when he went outside to see the deceased immediately before the shooting. Several of the witnesses identified the State's exhibit as a shotgun that belonged to the defendant. One of the defendant's witnesses testified that, after the shooting occurred but before the police arrived, she saw a man remove a gun that was inside the deceased's car.

[1]  The defendant first assigns as error the failure of the trial court to dismiss the charge of murder in the first degree for insufficiency of the evidence at the close of all the evidence. This assignment is without merit.

Before a charge of murder in the first degree can be submitted to the jury, the court must find substantial evidence of each essential element of the offense charged and of the defendant as the perpetrator of the crime. *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980). Substantial evidence must be existing and real, but it does not have to exclude every reasonable hypothesis of innocence. *State v. Jones,* 303 N.C. 500, 279 S.E. 2d 835 (1981); *State v. Smith,* 40 N.C. App. 72, 252 S.E. 2d 535 (1979). "The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal . . . ." *State v. Powell,* 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1980).

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. G.S. 14-17; *State v. Fleming,* 296 N.C. 559, 251 S.E. 2d 430 (1979). The intentional use of a deadly weapon gives rise to a presumption that the killing was unlawful and that it was done with malice. *State v. Myers,* 299 N.C. 671, 263 S.E. 2d 768 (1980). Premeditation is defined as thought beforehand for some length of time, however short. *Id.* Deliberation means an intent to kill executed by the defendant in a cool state of blood, in furtherance of a fixed designed for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. *State v. Bush,* 307 N.C. 152, 297 S.E. 2d 563 (1982); *State v. Faust,* 254 N.C. 101, 118 S.E.

2d 769, *cert. denied,* 368 U.S. 851, 7 L.Ed. 2d 49, 82 S.Ct. 85 (1961). The term "cool state of blood" does not mean that the defendant must be calm or tranquil or display the absence of emotion; rather, the defendant's anger or emotion must not have been such as to disturb the defendant's faculties and reason. *State v. Myers,* 299 N.C. 671, 263 S.E. 2d 768 (1980); *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974). The fact that there was a quarrel does not preclude the possibility that the defendant formed the intent to kill with premeditation and deliberation. *State v. Tysor,* 307 N.C. 679, 300 S.E. 2d 366 (1983); *State v. Misenheimer,* 304 N.C. 108, 282 S.E. 2d 791 (1981).

The evidence, taken in the light most favorable to the State, indicates that the defendant had shot at the deceased two weeks prior to the killing. The defendant and the deceased had argued earlier in the day and fought with knives, resulting in a cut on the defendant's shoulder. Just prior to the fatal shooting, a witness told the defendant that the deceased was coming in his car and that if he wanted to "get" him this was his chance. Following that, the defendant took his shotgun and pointed it at the deceased's car. The deceased had opened the door and placed one foot outside the car when the defendant shot him once with a sawed-off shotgun. The defendant then got in his own car and left. This evidence was sufficient to allow the charge of murder in the first degree to go to the jury.

[2]   The defendant's next assignment of error concerns the admission by the trial court of evidence of prior inconsistent statements made by two of the defendant's witnesses. We find no error.

Christine McMillan Littlejohn testified for the defendant that she was living with him on 21 June 1982 and was home when the shooting occurred. She testified that she did not see the defendant with a gun when he left the house immediately prior to the shooting. On cross examination, the State asked the witness if she had told Detective Alfred Basden that she had seen the defendant with a shotgun. Littlejohn replied, "I probably did. I might have did, but I don't believe saying that I saw the gun." When pressed further she stated that she did not see the gun but she told the detective that she did because she was "very upset." On rebuttal, the State called Detective Basden who testified that he in-

vestigated the shooting and on 21 June 1982 Littlejohn told him that when she heard the deceased's car approaching, the defendant went into the bedroom and came out with the shotgun.

The defendant also called Ronny Bradshaw who testified that he did not see the defendant with the gun and that he saw the deceased pull a gun from his car and aim it at the defendant before he was killed. On cross examination, the State asked the witness if he told Detective Basden and SBI Agent John Payne that he had seen the defendant with a gun and that he never saw the deceased with a gun. Bradshaw responded that the officers "[m]ust have misunderstand [sic] me . . . I was drinking . . . I told Mr. Basden both of them had a gun." Detective Basden and Agent Payne testified on rebuttal that Bradshaw told them that he saw the defendant with a shotgun and that he did not see the deceased with a gun.

Any witness may be cross examined by confronting him or her with prior statements inconsistent with any part of that witness's testimony. 1 Brandis, North Carolina Evidence, § 46 (1982). The use of the testimony of others to impeach a witness by showing he has made prior inconsistent statements was thoroughly dealt with in *State v. Green*, 296 N.C. 183, 193, 250 S.E. 2d 197, 203 (1978), in which the Court stated:

> If the statements relate to a matter which is "pertinent and material to the pending enquiry," *Jones v. Jones*, 80 N.C. 246 (1879), or which respects "the subject matter in regard to which he is examined," *State v. Patterson*, 24 N.C. 346 (1842), they may be proved by other witnesses without first calling them to the attention of the main witness on cross-examination. *State v. Patterson*, *supra*; 1 Stansbury, *supra*, § 48.

The distinction between material and collateral evidence was made in *State v. Long*, 280 N.C. 633, 640, 187 S.E. 2d 47, 51 (1972):

> The proper test for determining what is material and what is collateral is whether the evidence offered in contradiction would be admissible if tendered for some purpose other than mere contradiction; or in the case of prior inconsistent statements, whether evidence of the facts stated would be so admissible.

The statements by the witnesses in the present case were certainly "pertinent and material to the pending enquiry" and evidence of the facts contained within the statements would have been admissible if offered for "some purpose other than mere contradiction." Littlejohn's statements detailed the actions of the defendant when he returned to the house and retrieved his shotgun after the deceased's car was heard approaching. This is some evidence which tends to show an essential element of murder in the first degree: that the defendant acted with premeditation and deliberation. Bradshaw's statement dealt with the question of whether the defendant had a gun and, more importantly for impeachment purposes, whether the deceased had a gun. If the deceased had a gun and pointed it at the defendant and pulled the trigger, then quite possibly the defendant's shooting of the deceased was in self-defense. The court did in fact instruct on self-defense. The trial court did not err by allowing Detective Basden and Agent Payne to testify on rebuttal concerning the witnesses' prior inconsistent statements.

[3] Finally, the defendant assigns as error the trial court's failure to submit the charge of voluntary manslaughter to the jury. We find no prejudicial error.

The defendant's request for an instruction on voluntary manslaughter was denied. The court instructed the jury on murder in the first degree, murder in the second degree and self-defense. The jury returned a verdict of guilty of murder in the first degree. Assuming *arguendo* that the evidence supported an instruction on voluntary manslaughter, the court's failure to give the requested instruction was harmless error. In *State v. Freeman*, 275 N.C. 662, 170 S.E. 2d 461 (1969), the defendant alleged an error in the trial court's instructions on voluntary manslaughter and an error in the court's refusal to instruct on involuntary manslaughter. The court properly instructed on murder in the first degree and murder in the second degree and the jury returned a verdict of guilty of murder in the first degree. This Court, in finding no error in the defendant's trial, stated:

> A verdict of murder in the first degree shows clearly that the jurors were not coerced, for they had the right to convict in the second degree. That they did not indicates their certainty of his guilt of the greater offense. The failure to

instruct them that they could convict of manslaughter there-fore could not have harmed the defendant.

*Id.* at 668, 170 S.E. 2d at 465. *See also State v. Fowler*, 285 N.C. 90, 203 S.E. 2d 803 (1974), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1212, 96 S.Ct. 3212 (1976).

We hold that the defendant received a fair trial, free from prejudicial error.

No error.