STATE OF NORTH CAROLINA v. STEVEN JAMES McAVOY

No. 27A90

(Filed 25 June 1992)

1. **Homicide § 242 (NCI4th) — first degree murder — sufficiency of evidence**

The evidence was sufficient for submission to the jury in a prosecution for first degree murder based on premeditation and deliberation where it was stipulated that defendant shot the victim and the victim died as a result of the gunshot wound to his head inflicted by defendant, and substantial evidence tended to show that, even though the victim could not reach the defendant behind a bar and held no weapon

himself, defendant responded to the victim's verbal taunts by pulling out a gun and shooting the victim in the head.

**Am Jur 2d, Homicide §§ 47, 52, 246.**

2. **Criminal Law § 692 (NCI4th)— jury's request for written instructions—denial as matter of law—harmless error**
   The trial court erred in ruling as a matter of law that it had no authority to grant the jury's request during its deliberations for written instructions on the elements of first degree murder and the lesser included offenses which had been submitted to the jury, but such error was harmless where the trial court orally repeated the requested instructions.

**Am Jur 2d, Homicide §§ 482-497; Trial §§ 633 et seq.**

**Propriety and prejudicial effect of sending written instructions with retiring jury in criminal case. 91 ALR3d 382.**

3. **Evidence and Witnesses §§ 765, 3172 (NCI4th)— opening door to testimony—corroborating testimony—inclusion of additional facts**
   Defendant opened the door to testimony by a witness that defendant carried a gun at times outside the club where he worked when he testified that he carried his gun only in the club. Furthermore, a pretrial statement by the witness that defendant "carries a gun most of the time" was admissible to corroborate the witness's trial testimony relating two specific instances when defendant carried the gun outside the club since this statement was consistent with and tended to strengthen and add credibility to her trial testimony.

**Am Jur 2d, Evidence §§ 267-269, 500.**

4. **Evidence and Witnesses § 2870 (NCI4th)— cross-examination of defendant—credibility**
   The prosecutor's cross-examination of defendant as to whether he told a witness that he carried a gun because he hated black people and whether defendant left the club where he worked on one occasion to get his gun because narcotics agents were in the club was relevant and admissible on the issue of the credibility of defendant's testimony that he carried

the gun out of a fear of robbery and only in the club. N.C.G.S. § 8C-1, Rule 611(b).

**Am Jur 2d, Evidence §§ 267-269.**

5. **Evidence and Witnesses § 318 (NCI4th) — gun used in killing — possession as violation of law — cross-examination proper**

   The trial court in a first degree murder case did not err in allowing the prosecutor to cross-examine defendant and the manager of the club where defendant worked as a bartender about defendant's having the gun used in the killing on the premises of the club in violation of the law since evidence of the manner in which defendant possessed the gun at the time of the killing was relevant to establish facts surrounding the killing of the victim by defendant and a proper subject of cross-examination.

   **Am Jur 2d, Evidence § 251.**

6. **Homicide § 648 (NCI4th) — self-defense — place of business — insufficient evidence of assault by victim — instruction on no duty to retreat not required**

   The trial court in a first degree murder prosecution did not err by failing to instruct the jury that a person attacked in his place of business has no duty to retreat and may use force in self-defense, including deadly force, when appropriate where the evidence was insufficient to show that the victim assaulted defendant while defendant was at his place of business. The evidence was insufficient to show an assault by the victim upon defendant where it tended to show only that defendant was working as a bartender at a club; after the victim and defendant exchanged words in the hallway of the club near the storage room, the two men returned to the room where the bar was located; defendant then went behind the bar, and the victim stood in front of the bar facing defendant; the victim shouted at defendant to shoot him or he was going to kill defendant; defendant drew a pistol from his belt and aimed it at the victim's head; defendant and the victim continued to yell at each other while defendant was pointing the gun at the victim's head; and defendant testified that the victim then reached back with his right hand toward his right hip to grab what defendant thought was a pistol, whereupon defendant shot the victim.

**STATE v. McAVOY**

[331 N.C. 583 (1992)]

**Am Jur 2d, Homicide §§ 139-142, 145-147, 169.**

**Duty to retreat as condition of self-defense when attack occurs at office, or place of business or employment. 41 ALR3d 584.**

7. **Homicide § 588 (NCI4th) — self-defense — necessity for deadly force — honest but unreasonable belief — murder not reduced to manslaughter**

It would be incorrect for the trial court in a first degree murder prosecution to instruct the jury that an honest but unreasonable belief that deadly force was necessary will reduce murder to manslaughter. Such an instruction would conflict with a long line of cases which hold that the State's disproof of the reasonable belief element of self-defense permits a conviction for murder while the State's disproof of only the nonexcessive force element of self-defense results in manslaughter. To the extent that some prior cases may be read to require that a jury be instructed that it should return a verdict of manslaughter rather than murder if it finds that defendant killed the victim under an honest but unreasonable belief that deadly force was necessary, these cases are disapproved.

**Am Jur 2d, Homicide §§ 151-159.**

**Modern status of rules as to burden and quantum of proof to show self-defense. 43 ALR3d 221.**

Justice MITCHELL dissenting.

Justice WEBB joins in this dissenting opinion.

Justice LAKE did not participate in the consideration or decision of this case.

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Davis, J.*, at the 25 September 1989 Criminal Session of Superior Court, GUILFORD County. Heard in the Supreme Court 11 February 1991.

*Lacy H. Thornburg, Attorney General, by Jane P. Gray, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

STATE v. McAVOY

[331 N.C. 583 (1992)]

FRYE, Justice.

Defendant was tried in a non-capital trial upon a true bill of indictment charging him with first-degree murder. The jury returned a verdict of guilty as charged, and the trial court sentenced defendant to a term of life imprisonment. We find no prejudicial error in defendant's trial.

The State's evidence tended to show that on the evening of 7 September 1988, defendant was working as a bartender at the Winner's Circle Club. Around 11:30 or 11:45 p.m., Gary Gray was in the club and told Annette Underwood and Michelle Williams that his wife and defendant were "seeing each other." Gray said that he wanted to take photographs of his wife and the defendant to use as evidence in order to gain custody of the Grays' children if he and his wife separated.

When defendant went to a storage room behind the bar in the club to answer the telephone, Gray walked to a door between a hallway and the storage room, opened the door, and talked with defendant. The two men exchanged words, and defendant pushed Gray back into the hallway. Gray then went around to the front of the bar. As more words were exchanged between the two men, defendant pulled out a gun and aimed it at Gray's head. There was conflicting testimony at trial as to what the two men said to each other and whether defendant pulled out his gun before or after Gray yelled at him. There was testimony that defendant pulled out his gun, and Gray slapped at it once as he stood on the ledge of the bar yelling, "Shoot me. Go ahead shoot me."

After Gray's challenge, defendant shot Gray in the head. Defendant then asked someone to call the police. Anita Hawkins testified that she then went to a telephone in the back of the club, but defendant followed her and told her that it did not work and to use the telephone outside. As she walked outside, Hawkins observed another patron calling the police on a pay telephone. She also testified that when she returned inside, defendant was using the same telephone that he had told her did not work.

When the police arrived at approximately 11:50 p.m., defendant was on the telephone. The police arrested him. Officer Paul Rocco of the Greensboro Police Department testified that defendant was cooperative and told police where his gun was when they asked.

Officer Rocco also testified that he did not detect any odor of alcohol about the defendant.

There was also evidence tending to show that Gray was a carpet installer and was wearing a leather holster containing an all-purpose knife. The knife contained a double-edged razor blade.

Gray died on 12 September 1988. At trial, it was stipulated that the gunshot wound to the head, inflicted by defendant, caused Gray's death. It was also stipulated that the bullet removed from Gray's body was fired from defendant's pistol.

Defendant testified in his own defense. According to defendant, Gray confronted him two weeks to a month before the shooting. On that occasion, Gray entered the club and accused defendant of going out with his wife, Carol Gray. Gray told defendant if he ever caught him going out with his wife, he would kill him.

Defendant testified that on 7 September 1988, when he went to the storage room to answer the telephone, Gray told him that five people in the bar that night had said that defendant was going out with Carol. After defendant denied the accusation, Gray replied, "Well, I'm going to tell you right now, I'm going to kill you." Gray reached for defendant's shirt, and defendant stepped away. As defendant stepped back from Gray, he noticed that Gray was carrying a weapon on his side. It looked like a pearl-handled pistol in a holster. Defendant further testified that as he stepped back into the club, Gray walked to the other side of the bar from defendant, leaned over the bar, and screamed at defendant more than once, "Shoot me or I'm going to kill you." Defendant testified that he was not sure, but he might have told Gray, "Leave and I won't call the police." After Gray shouted his first threat, defendant drew a pistol from his belt. Gray then reached back with his right hand toward his right hip to grab what defendant thought was a pistol. Defendant then shot Gray.

Defendant testified that he shot Gray because he thought Gray was going to shoot him. Defendant said he intended only to hurt Gray, not kill him.

Defendant testified that he told Anita Hawkins she could not use the telephone behind the bar because it would not reach 911 (emergency assistance). Later he realized that it was 411 (directory assistance) that could not be reached on that telephone. He knew the telephone could be used for outgoing calls generally; he himself

made a call from the telephone to Robert Patavoni, the manager of the club, after the police arrived.

Evidence also tended to show that Gray said something like "shoot me, MF. If you don't shoot me, I'll shoot you." According to one witness, defendant told Gray that if Gray would calm down and go home, defendant would not call the police. Gray then screamed, "Shoot me, shoot me . . . , you MF or I'll kill you." Defendant then shot Gray.

Defendant first assigns as error the failure of the trial court to dismiss the charge of murder. Defendant argues that the evidence at trial was insufficient to support a conviction for first-degree murder, second-degree murder or voluntary manslaughter and that the trial court erred in instructing the jury to consider verdicts finding him guilty of any of those offenses. This assignment of error is without merit.

In ruling on a motion to dismiss, the trial court must determine whether there is substantial evidence of each element of the offense charged, or any lesser offense, and that the defendant is the perpetrator. *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982).

> Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The term "substantial evidence" simply means "that the evidence must be existing and real, not just seeming or imaginary." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

*State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). Further, the trial court must consider the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference. *Id.* at 237, 400 S.E.2d at 61. If there is substantial evidence of each element of the offense charged, or any lesser included offenses, the trial court must deny the motion to dismiss as to those charges supported by substantial evidence and submit them to the jury for its consideration; the weight and credibility of such evidence is a question reserved for the jury. *Id.* at 236-37, 400 S.E.2d at 61.

Murder in the first degree is the unlawful killing of another human being with malice and with premeditation and deliberation. N.C.G.S. § 14-17; *State v. Woodard*, 324 N.C. 227, 230, 376 S.E.2d 753, 755 (1989). The intentional use of a deadly weapon gives rise

to a presumption that the killing was unlawful and that it was done with malice. *State v. Judge*, 308 N.C. 658, 661, 303 S.E.2d 817, 820 (1983). Premeditation is defined as thought beforehand for some length of time, however short. *Id.* Deliberation means an intent to kill executed by the defendant in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. *Id.*

[1] The evidence taken in the light most favorable to the State in the present case tended to show that defendant acted with malice, premeditation and deliberation. It is undisputed that defendant shot Gray and that Gray died as a result of the gunshot wound to his head inflicted by defendant. Substantial evidence tended to show that even though Gray could not reach defendant behind the bar and held no weapon himself, defendant responded to Gray's verbal taunts by pulling out a gun and shooting Gray in the forehead. Furthermore, substantial evidence tended to show that thereafter defendant made no effort to assist Gray. In fact, the jury reasonably could have found from the evidence presented that defendant prevented the person whom he had asked to call the police from doing so by telling her the telephone did not work, when in fact it did. Taken in the light most favorable to the State, such substantial evidence would permit, but not require, a jury to reasonably conclude that defendant did not believe it necessary to kill the deceased to save himself from death or great bodily harm and that the State had carried its burden of disproving self-defense. *See State v. Bush*, 307 N.C. 152, 297 S.E.2d 563 (1982). Further, such evidence would support, but not compel, a reasonable finding by the jury that the State had carried its burden in the present case of showing that the defendant did not act in the heat of passion suddenly aroused by just cause or legal provocation. *Id.* Taken in the light most favorable to the State, there was substantial evidence that defendant acted with malice, premeditation and deliberation. The trial court did not err in denying defendant's motion to dismiss at the conclusion of all of the evidence.

[2] By his next assignment of error, defendant contends that the trial court erred by orally reinstructing the jury on the elements of murder in the first degree, murder in the second degree, voluntary manslaughter, and self-defense after ruling that it could not provide those instructions in writing as requested by the jury.

STATE v. McAVOY

[331 N.C. 583 (1992)]

We conclude that the trial court erred in its ruling but that the error was harmless.

During its deliberations in this case, the jury asked the trial court for written instructions on the elements of first-degree murder and the lesser included offenses which had been submitted for the jury's consideration. In denying the request, the trial court stated that it lacked the authority to give the jury written instructions. Instead, the trial court orally repeated the requested instructions. After the trial court did so, the jury foreman thanked the trial court, and the jury returned to the jury room.

The trial court erred in ruling as a matter of law that it had no authority to give the jury written instructions. A trial court has inherent authority, in its discretion, to submit its instructions on the law to the jury in writing. *State v. Bass*, 53 N.C. App. 40, 45, 280 S.E.2d 7, 10 (1981). When a trial court fails to exercise its discretion in the erroneous belief that it has no discretion as to the question presented, there is error. Where the error is prejudicial to a party, that party is entitled to have the question reconsidered and passed upon as a discretionary matter. *State v. Lang*, 301 N.C. 508, 510, 272 S.E.2d 123, 125 (1980); *see Henry v. Deen*, 310 N.C. 75, 82, 310 S.E.2d 326, 331 (1984). In such cases, this Court may remand the case or take such other actions as the rights of the parties and applicable law may require. *State v. McDowell*, 310 N.C. 61, 74, 310 S.E.2d 301, 310 (1984).

While the trial court's ruling was erroneous in the present case, it did not result in prejudice to the defendant. The trial court repeated the requested instructions in their entirety, thereby complying with the essence of the jury's request. Defendant gives no reason, and we find none, why giving the requested instructions orally did not serve the same purpose as written instructions. Furthermore, it appears from the record that the instructions satisfied the jury's request since it made no further inquiry; therefore, defendant has not carried his burden of showing that the trial court's error was harmful. Because defendant has failed to show a reasonable possibility that the outcome at trial would have been different had the requested instructions been provided in writing rather than orally, we conclude that the trial court's error was harmless error. N.C.G.S. § 15A-1443(a) (1988).

By another assignment of error, defendant contends the trial court abused its discretion in allowing the prosecutor to elicit cer-

tain evidence and then refer to it or use it in his final argument. During direct examination, defendant testified that the reason he bought the gun he used to kill the victim was his fear of a robbery at the club. He also denied carrying the gun anywhere but in the club. Thereafter, Michelle Williams was recalled and testified in rebuttal about two occasions when defendant had carried his gun unrelated to any fear of robbery. On one of those occasions, he carried the gun into a restaurant where he had gone with Williams.

[3] Defendant first contends under this assignment of error that the trial court erred in allowing the prosecutor to introduce testimony concerning a pretrial statement given by Williams to Officer Ken Ventura. This testimony was offered and admitted as evidence in corroboration of the testimony given by Williams during presentation of the State's case. The trial court gave a proper limiting instruction that evidence concerning the statement was admitted for purposes of corroboration only. The statement was then read without objection by defendant. In the statement, Williams said that defendant "carries a gun most of the time."

The trial court properly admitted evidence concerning defendant's carrying a gun at times when he was not in the club, because defendant "opened the door" for this evidence when he testified that he carried his gun only in the club. Nevertheless, defendant contends that the trial court erred in allowing testimony concerning Williams' pretrial statement to the effect that defendant carried a gun most of the time because Williams' testimony at trial only related to specific instances when defendant had carried a gun. We do not agree. "In order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness' testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony." *State v. Ramey*, 318 N.C. 457, 469, 349 S.E.2d 566, 573 (1986). Here, Williams' prior statement, although including additional facts not referred to in her testimony, was consistent with and tended to strengthen and add credibility to her trial testimony that the defendant had carried a gun outside the bar; therefore, the statement was admissible as corroborative evidence. *Id.* at 470, 349 S.E.2d at 574.

[4] Next, defendant contends in support of this assignment of error that the trial court erred in allowing the prosecutor to ask defendant during cross-examination whether, as Williams had

testified, defendant told Williams that he carried a gun because he hated black people. Defendant also contends the trial court erred in allowing the prosecutor to ask defendant during cross-examination whether, as Williams had testified, defendant left the club on one occasion to get his gun because narcotics agents were in the club. Under N.C.G.S. § 8C-1, Rule 611(b), subject to certain exceptions not pertinent here, cross-examination of a witness as to any matter relevant to any issue in a case, including credibility, is proper. Hence, we conclude that this line of cross-examination was proper, as it was relevant to the issue of the credibility of defendant's testimony that he carried the gun out of fear of robbery and only carried the gun in the club.

[5] Defendant further contends in support of this assignment of error that the trial court erred in allowing the prosecutor to cross-examine him and Robert J. Patavoni, the manager of the club, about having the gun on the premises of the club in violation of law. Such cross-examination was proper if it related to any matter relevant to any issue in the case, N.C.G.S. § 8C-1, Rule 611(b) (1988), and is not otherwise excludable. N.C.G.S. § 8C-1, Rule 402 (1988). Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1988).

It is unlawful for "any person," with certain exceptions not pertinent here, to carry a gun into a business where alcohol is sold and consumed. N.C.G.S. § 14-269.3 (1986). Evidence that defendant carried the gun into the club in violation of criminal law was relevant to the manner in which he possessed the gun at the time of the killing in the present case and, thus, "of consequence to the determination of the action." Therefore, it was "relevant evidence" tending to establish facts surrounding the killing of the victim by defendant and a proper subject to explore during cross-examination. Furthermore, the probative value of this evidence is not "substantially outweighed by the danger of unfair prejudice." N.C.G.S. § 8C-1, Rule 403 (1988). The trial court did not err in admitting any of the evidence complained of under this assignment of error.

In addition, defendant argues that the trial court erred in permitting the prosecutor to refer during his closing argument to the evidence complained of in this assignment of error. Since

we have concluded that the evidence complained of under this assignment of error was properly admitted, the prosecutor's arguments based upon that evidence were proper. We conclude that there was no error in admitting the evidence and allowing the prosecutor to refer to it in his closing argument. Accordingly, this assignment of error is without merit.

[6] In another assignment of error, defendant contends that the trial court erred by failing to instruct the jury that a person attacked in his place of business has no duty to retreat and may use force in self-defense, including deadly force, when appropriate. The question at issue is whether the trial judge should have instructed the jury in accord with the following pattern instruction:

> If the defendant was not the aggressor and he was [in his own home] [on his own premises] [at his place of business] he could stand his ground and repel force with force regardless of the character of the assault being made upon him. However, the defendant would not be excused if he used excessive force.

N.C.P.I.—Crim. 308.10 (1983).

It is to be noted that this instruction is to be used following the usual self-defense instructions where there is evidence raising the issue of retreat. The instruction is to be given if the evidence shows that the victim assaulted defendant while defendant was at his place of business. *See State v. Benge*, 272 N.C. 261, 158 S.E.2d 70 (1967).

In the instant case, there was no evidence of an assault by the victim upon the defendant at the time in question. After the two men exchanged words in the hallway near the storage room, defendant and the victim returned to the room where the bar was located. Defendant then went behind the bar, and the victim stood in front of it facing defendant. The parties at that time were separated by the serving bar in the establishment. The victim then shouted at defendant, "Shoot me or I'm going to kill you." Defendant then drew a pistol from his belt and aimed it at the victim by pointing the gun at his head. Defendant and the victim continued to yell at each other while defendant was pointing the gun at the victim's head. Defendant testified that the victim then reached back with his right hand towards his right hip to grab what defendant thought was a pistol, whereupon defendant shot the victim.

STATE v. McAVOY

[331 N.C. 583 (1992)]

While this evidence may be sufficient to support an instruction on self-defense upon the theory that the defendant had a reasonable belief that it was necessary to kill the victim in order to protect himself from death or great bodily harm, it does not support a finding that the deceased made an assault upon the defendant. An assault is a show of violence causing a reasonable apprehension of immediate bodily harm, an intentional offer or attempt by force or violence to do injury to the person of another. *See State v. Thompson*, 27 N.C. App. 576, 219 S.E.2d 566 (1975), *disc. rev. denied*, 289 N.C. 141, 220 S.E.2d 800 (1976). The only assault being committed at the time of the shooting was by the defendant upon the victim by pointing the gun at the victim's head. N.C.G.S. § 14-34 (1986). Therefore, the judge was not required to give the instruction concerning the duty of one to retreat when assaulted in his own place of business. The judge gave proper instructions on self-defense based upon the evidence in this case. The jury heard the self-defense testimony and the court's instruction, but found that defendant could not avail himself of this defense. Thus, we find no error in this assignment of error.

[7] Under his next assignment of error, defendant contends that the trial court erred by giving the jury conflicting instructions on self-defense. The principles regarding the law of self-defense are well established. The elements which constitute perfect self-defense are:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981). Under the law of perfect self-defense, a defendant is excused

altogether if, at the time of the killing, all of the above four elements existed. *Id.* On the other hand, under the law of imperfect self-defense, if the first two elements existed at the time of the killing, but defendant, although without murderous intent, was the aggressor in bringing on the affray or used excessive force, defendant is guilty at least of voluntary manslaughter. *Id.*, 279 S.E.2d at 573. Defendant concedes that the trial court instructed the jury in accordance with these principles, but argues that further instruction was required.

Defendant contends that there are two inconsistent lines of cases discussing the law of imperfect self-defense. The first line of cases recognizes an imperfect right of self-defense when both elements one and two of perfect self-defense are present, but either element three or four does not exist. Under these cases, if the State disproves either element one or two, the court is not required to give a charge on imperfect self-defense. *See generally State v. Norman*, 324 N.C. 253, 260, 378 S.E.2d 8, 12 (1989); *State v. Mize*, 316 N.C. 48, 53, 340 S.E.2d 439, 442 (1986).

In a second line of cases, defendant argues, this Court has treated elements two and four as being legally equivalent. Defendant calls our attention to four cases: *State v. Jones*, 299 N.C. 103, 112, 261 S.E.2d 1, 8 (1980) ("A defendant who honestly believes that he must use deadly force to repel an attack but whose belief is found by the jury to be unreasonable . . . has, by definition, used excessive force."); *State v. Clay*, 297 N.C. 555, 563, 256 S.E.2d 176, 182 (1979) ("Our decision says, in effect, that where the assault being made upon defendant is insufficient to give rise to a reasonable apprehension of death or great bodily harm, then the use of deadly force by defendant to protect himself from bodily injury or offensive physical contact is excessive force as a matter of law."), *overruled on other grounds by State v. Davis*, 305 N.C. 400, 415, 290 S.E.2d 574, 583 (1982); *State v. Woods*, 278 N.C. 210, 217, 179 S.E.2d 358, 363 (1971) ("If defendant had reasonable grounds to believe that it was necessary to shoot [the victim] to save herself from death or great bodily harm, she did not use excessive force in shooting him."); and *State v. Thomas*, 184 N.C. 757, 762, 114 S.E. 834, 837 (1922) ("[I]f the slayer acts from an honest belief that it is necessary to protect himself, and not from malice or revenge, even though he formed such conclusion hastily and without due care, and when the facts did not justify it, still, under such a case, although such belief on his part will not fully justify him,

STATE v. McAVOY

[331 N.C. 583 (1992)]

it may go in mitigation of the crime, and reduce the homicide from murder to manslaughter."), *overruled on other grounds by State v. Young*, 324 N.C. 489, 492, 380 S.E.2d 94, 96 (1989).

Relying upon this second line of cases, defendant contends that the State's proof of unreasonableness under element two and the State's proof of excessiveness under element four should result in identical verdicts. He urges this Court to reconsider its decisions in the first line of cases and to adopt what he concludes is the reasoning of the second line of cases: "[T]he reduced culpability of a person who makes a sincere but unreasonable mistake about the need to kill in self-defense (i.e., of a person who uses excessive force) should result in a conviction for voluntary manslaughter, not murder."

The essence of defendant's contention is this:

If the jury finds that defendant killed the victim under an honest but unreasonable belief that killing the victim was necessary to protect the defendant from imminent death or great bodily harm, the use of deadly force was necessarily excessive (and thus not in perfect self-defense), but the sincerity of defendant's belief negates malice, an essential element of murder. Therefore, upon such a finding, defendant may be convicted of voluntary manslaughter but not murder.

While this contention finds support in *State v. Thomas*, 184 N.C. 757, 114 S.E. 834, and in the reasoning of this Court in *State v. Jones*, 299 N.C. 103, 261 S.E.2d 1, we find it to be contrary to the principles enunciated in a long line of well-reasoned decisions of this Court defining the law of self-defense. *E.g., State v. Mize*, 316 N.C. 48, 340 S.E.2d 439; *State v. Bush*, 307 N.C. 152, 297 S.E.2d 563 (1982); *State v. Norris*, 303 N.C. 526, 279 S.E.2d 570; *State v. Potter*, 295 N.C. 126, 244 S.E.2d 397 (1978). Accordingly, we reject defendant's contention.

Defendant relies principally upon *State v. Jones*, 299 N.C. 103, 261 S.E.2d 1. Jones was convicted of first-degree murder after shooting a man who had chased several people down the street and into Jones' home. Jones shot the victim while the victim was on the porch after the victim had torn the lock off the screen door and after Jones' brother struck the victim with a shovel. The Court of Appeals found no error in the trial. *State v. Jones*, 41 N.C. App. 465, 255 S.E.2d 232 (1979). Judge (now Justice) Webb

dissented on the grounds that defendant was entitled to a charge on the defense of home and acting out of the heat of passion. *Id.* at 472, 255 S.E.2d at 237 (Webb, J., dissenting). The Court of Appeals was unanimous in rejecting defendant's contention that if he had an "honest and actual belief" that the killing was necessary in order to prevent great bodily harm or death to his brother, that would be sufficient to rebut the presumption of malice. *Id.* at 471, 255 S.E.2d at 237. Noting that the rule argued for by defendant had never been the law of North Carolina, the court continued:

> In order for the killing of another to be excused on the basis of defense of a family member, the defendant must have had a *reasonable* belief that the killing was necessary to prevent the death or serious injury of the family member.

*Id.* (citation omitted). On appeal, the Supreme Court held that the trial judge erred in refusing to instruct the jury on defendant's right to defend his home from an attempted forceful entry by the victim and by refusing to instruct on voluntary manslaughter by reason of a killing committed in the heat of passion. *Jones*, 299 N.C. at 113, 261 S.E.2d at 8. This Court continued:

> Defendant is entitled to an instruction on voluntary manslaughter due to the use of excessive force while otherwise acting in defense of a family member and in defense of home or due to defendant's being the aggressor. *He is not entitled to an instruction on self-defense or voluntary manslaughter due to an honest but unreasonable belief in the necessity (real or apparent) to kill.*

*Id.* (Emphasis added.) We agree with this Court's decision in *Jones.* However, in reaching its decision, the Court reasoned as follows:

> A defendant who honestly believes that he must use deadly force to repel an attack but whose belief is found by the jury to be unreasonable under the surrounding facts and circumstances, has by definition, used excessive force. This rule was made clear in *State v. Clay, supra,* where Justice [Branch] wrote:
>
>> "[W]here the assault being made upon defendant is insufficient to give rise to a reasonable apprehension of death or great bodily harm, then the use of deadly force by defendant to protect himself from bodily injury or offen-

sive physical contact is excessive force as a matter of law." *State v. Clay, supra* at 563, 256 S.E.2d at 182; *see also*, LaFave & Scott, *Criminal Law* § 53, pp. 392-94, § 77, pp. 583-84 (1972).

> Thus, for all practical purposes, to state that one who, while acting in defense of a family member or in defense of home uses excessive force is guilty of voluntary manslaughter is but another way of stating that one who has an honest but unreasonable belief that it is necessary or apparently necessary to kill is guilty of voluntary manslaughter.

*Jones*, 299 N.C. at 112, 261 S.E.2d at 8. We agree with the holding in *Jones* that the defendant was "not entitled to an instruction on self-defense or voluntary manslaughter due to an honest but unreasonable belief in the necessity . . . to kill." However, we do not adopt the *Jones* Court's reading of the language in *Clay* when it says that "for all practical purposes, . . . one who . . . uses excessive force is guilty of voluntary manslaughter is . . . another way of stating that one who has an honest but unreasonable belief that it is necessary . . . to kill is guilty of voluntary manslaughter." The quoted language in *Clay* does not equate elements two and four. We conclude, therefore, that reliance by the *Jones* Court on the quoted sentence from *Clay* was misplaced.

In *Clay*, defendant was charged with assault with a deadly weapon with intent to kill inflicting serious bodily injury and convicted of assault with a deadly weapon inflicting serious injury. This Court held 1) that the trial judge correctly denied defendant's motion to suppress her inculpatory statements, and 2) the instructions on self-defense were not prejudicial to defendant. *Clay*, 297 N.C. at 566, 256 S.E.2d at 183. In writing for the Court, Justice (later Chief Justice) Branch said:

> Notwithstanding the language in [two earlier cases] we hold that a defendant may employ deadly force in self-defense *only* if it reasonably appears to be necessary to protect against death or great bodily harm. . . . In so holding, we expressly reject defendant's contention, and any implication in our cases in support thereof, that a defendant would be justified by the principles of self-defense in employing deadly force to protect against bodily injury or offensive physical contact. Our decision says, in effect, that where the assault being made

upon defendant is insufficient to give rise to a reasonable apprehension of death or great bodily harm, then the use of deadly force by defendant to protect himself from bodily injury or offensive physical contact is excessive force as a matter of law. . . . This decision precludes the use of deadly force to prevent bodily injury or offensive physical contact and in so doing recognizes the premium we place on human life. However, it does not preclude the use of deadly force where such force reasonably appears to be necessary to prevent death or great bodily harm.

*Id.* at 563-64, 256 S.E.2d at 182.

We conclude that defendant's reliance upon *Clay* is misplaced. *Clay* speaks to the use of deadly force in response to other force — whether the other force is sufficient to create a reasonable apprehension *that deadly rather than non-deadly force is required* on the part of the defendant to protect himself [or his family or home]. It does not speak to "an honest but unreasonable" belief; nor does it attempt to equate elements two and four of the principles of self-defense.

In *State v. Woods*, 278 N.C. 210, 179 S.E.2d 358, defendant was charged with first-degree murder and tried for second-degree murder. Defendant was convicted of voluntary manslaughter. A new trial was awarded for several assigned errors in the instructions to the jury. *Id.* at 217, 179 S.E.2d at 363. Chief Justice Sharp, writing for a unanimous Court, then said:

However, we also deem it appropriate to call attention to certain additional errors in the charge.

In the mandate, the judge instructed the jurors to return a verdict of *involuntary* manslaughter in the event defendant satisfied them she shot [the victim] in the reasonable belief "that the shooting of the deceased was necessary in order to save herself from death or great bodily harm" but failed to satisfy them that the force she used was not excessive under the circumstances. Obviously this charge incorporates contradictions. If defendant had reasonable grounds to believe that it was necessary to shoot [the victim] to save herself from death or great bodily harm, she did not use excessive force in shooting him. Furthermore, when one who is fighting in self-defense uses excessive force he is guilty of *voluntary*

**STATE v. McAVOY**

[331 N.C. 583 (1992)]

manslaughter. *State v. Ramey, supra; State v. Cooper,* 273 N.C. 51, 159 S.E.2d 305. There was in this case no evidence which would have justified a verdict of involuntary manslaughter.

*Woods,* 278 N.C. at 217-18, 179 S.E.2d at 363.

There was evidence in *Woods* tending to show that defendant shot twice in the direction of the victim, intending to scare him. Under these circumstances, the Court's comment that defendant did not use excessive force in shooting the victim if she had reasonable grounds to believe that it was necessary to shoot him to save herself from death or great bodily harm seems to be correct. Thus, it would seem unnecessary *in this fact situation,* to give the fourth element of the self-defense instruction. However, this does not speak to defendant's contention here that an honest but unreasonable belief that deadly force is necessary will reduce murder to manslaughter.

*State v. Thomas,* 184 N.C. 757, 114 S.E. 834, while not entirely clear as to whether the suggested instructions should be given in defining the malice necessary to convict of murder or on what the State must disprove in reference to imperfect self-defense, may be read as supporting defendant's contention that the jury should be instructed that an honest but unreasonable belief that deadly force is necessary will reduce murder to manslaughter. Nevertheless, we conclude that such an instruction conflicts with the long line of cases which hold that the State's disproof of element two permits a conviction of murder, while the State's disproof only of element four results in manslaughter. Therefore, to the extent that the four cases upon which defendant relies, *i.e., Jones, Clay, Woods,* and *Thomas,* may be read to require that a jury be instructed that it should return a verdict of manslaughter rather than murder if it finds that defendant killed the victim under an honest but unreasonable belief that deadly force was necessary, these cases are disapproved. Based upon the foregoing, we conclude that defendant has not shown error in the trial judge's instruction on imperfect self-defense.

For the foregoing reasons, we find defendant's trial free of prejudicial error.

No error.

Justice LAKE did not participate in the consideration or decision of this case.

Justice MITCHELL dissenting.

The defendant contends that the trial court erred by failing to instruct the jury that a person attacked in his place of business has no duty to retreat and may use force in self-defense, including deadly force, when appropriate.

Ordinarily, when a person who is free from fault in bringing on a difficulty is attacked in his home or on his own premises, the law imposes on him no duty to retreat before he can justify his fighting in self-defense. The person is entitled to stand his ground, to repel force with force, and to increase his force to overcome the assault and to secure himself from harm.

*State v. Morgan*, 315 N.C. 626, 642, 340 S.E.2d 84, 94 (1986) (quoting *State v. McCray*, 312 N.C. 519, 532, 324 S.E.2d 606, 615 (1985)) (citation omitted). The defendant requested that the trial court instruct the jury with regard to self-defense. Substantial evidence in the present case tended to show that the defendant was free from fault and acted in self-defense to repel an attack made upon him on his business premises. Therefore, the trial court erred by failing to give an instruction negating any duty of the defendant to retreat under such circumstances.

The majority errs in its view that "there was no evidence of an assault by the victim upon the defendant at the time in question." Frankly, I find that view of the evidence to be incredible.

In ruling on this assignment of error, the evidence must be viewed in the light most favorable to the defendant. *State v. Baldwin*, 330 N.C. 446, 412 S.E.2d 31 (1992); *State v. Webster*, 324 N.C. 385, 378 S.E.2d 748 (1989). Taken in that light, the evidence tended to show that the defendant was the bartender at the Winner's Circle Club on 7 September 1988. Gary Gray was in the club at approximately 11:45 p.m. that evening, having been told previously that the defendant and Gray's wife were "seeing each other." When the defendant went to a storage room to answer the telephone, Gray followed him and told him that five people in the bar that night had said that the defendant was going out with Gray's wife. When the defendant denied the accusation, Gray replied, "well,

I'm going to tell you right now, I'm going to kill you." Gray reached for the defendant's shirt, and the defendant stepped away from him. As the defendant stepped away from Gray, he noticed that Gray had what appeared to be a pearl-handled pistol in a holster on his belt. As the defendant stepped back into the club, Gray came to the other side of the bar from him, leaned over the bar and screamed more than once, "shoot me or I'm going to kill you." After Gray shouted his first threat at the bar, the defendant drew a pistol from his belt and pointed it at Gray. Gray, who was standing on the ledge of the bar, slapped at the defendant's pistol once. Gray then reached back with his right hand toward his right hip to grab what appeared to be a pearl-handled pistol in the holster on his belt. The defendant then shot Gray.

A jury could reasonably have found from such evidence that Gray had mounted the bar ledge, placing the defendant easily within his reach, and had attempted to slap the pistol from the defendant's hand. That fact, coupled with the fact that Gray had just made several statements clearly indicating his intent to kill the defendant, had followed the defendant from the storage room to the bar, and was reaching for a weapon on his hip, would clearly support a reasonable finding that the defendant killed in response to an unprovoked and deadly attack by Gray. See, e.g., State v. Thornton, 211 N.C. 413, 418, 190 S.E. 758, 761 (1937). Therefore, the trial court erred in failing to give an instruction negating the duty to retreat on one's own business premises.

As the issue does not arise under the Constitution of the United States, the burden of showing prejudice is upon the defendant. N.C.G.S. § 15A-1443(a) (1988). Such errors relating to rights that do not arise under the Constitution of the United States are prejudicial when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial. State v. Gardner, 316 N.C. 605, 342 S.E.2d 872 (1986). In the present case, the defendant has made the required showing of prejudice.

Here, there was almost no variance between the State's version of the critical events and the defendant's version of those events; the disputed factual and legal issues revolved around the question of the defendant's state of mind at the time he killed the deceased. Taken in the light most favorable to the defendant, as it must be, the evidence at trial required an instruction that

if the jury found that the defendant was free from fault in bringing on the difficulty and was attacked on his own business premises by the deceased, the law imposed on the defendant no duty to retreat before repelling the assault with whatever force necessary to save himself from harm. Had such an instruction been given, there is a reasonable possibility that the jury would have found the defendant not guilty. Therefore, the defendant has carried his burden of showing that the trial court's failure to instruct the jury in this regard was prejudicial, and the defendant is entitled to a new trial. Accordingly, I dissent from the decision of the majority.

Justice WEBB joins in this dissenting opinion.